


MAR 1 2 2019

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAMELA MANTICA *

Plaintiff, *

v. * Civil Action No. RDB-18-0632

UNUM LIFE INSURANCE COMPANY OF AMERICA *

Defendant. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff, Pamela Mantica ("Ms. Mantica") brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against Defendant Unum Life Insurance Company of America ("Unum"), seeking a declaration of entitlement to disability benefits, payment of back benefits plus interest, and payment of attorney's fees and costs. (Compl., ECF No. 1.) Unum paid Ms. Mantica monthly long-term disability benefit payments from April 2015 through April 2017 and then determined that Ms. Mantica was no longer eligible for the benefit. (ECF No. 14-1 at 1.) Ms. Mantica claims that she is entitled to ongoing disability benefits, has timely pursued the appeals process, and exhausted all administrative appeals prior to filing suit. (ECF No. 1 at ¶¶ 18-19.) Currently pending before this Court are Defendant Unum Life Insurance Company of America's Motion for Summary Judgment (ECF No. 14) and Plaintiff's Cross Motion for Summary Judgment (ECF No. 13). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). As explained herein, application of Maryland law to this ERISA case requires this Court to perform a *de novo* review of Ms. Mantica's claim for long-term disability benefits,

which requires credibility determinations and findings of fact. Therefore, Defendant Unum Life Insurance Company of America's Motion for Summary Judgment (ECF No. 14) shall be DENIED, Plaintiff's Cross Motion for Summary Judgment (ECF No. 13) shall be DENIED, and this case shall proceed to a bench trial on the Evidentiary Record with additional witness testimony.[1]

## BACKGROUND

### I. Ms. Mantica's Occupation

Ms. Mantica is a college graduate, holding both a Bachelor of Science Degree and a Registered Professional Nurse Degree. (ER 316, 333.) She has computer technology skills as well as experience in home care nursing, ICU/CCU nursing, teaching, training, public speaking, and sales of medical devices. (ER 318-19.) Ms. Mantica was hired as an Acute Support Consultant II by Alere, Inc. ("Alere") on November 17, 2008. (ER 5). Her job description included the requirement to travel to provide clinical and technical training, assisting in performing and writing studies, educating staff on products, supporting a sales team, resolving customer complaints and inquiries, maintaining knowledge of pertinent federal and other regulations, creating and maintaining product implementation programs, and devising strategies for account retention. (ER 253-54, 258.) The job requirements placed it at the "Light" level of exertion as defined in the *Dictionary of Occupations Titles*, 4th ed. (1991, Revised). (ECF No. 13-1 at 21; ER 274.)

---

1 The insurance policy and claim review file will be referred to herein as the "Evidentiary Record" or "ER" together with the identifying bates-number(s) for the page(s) cited. Due to their voluminous size, a hard copy has been filed under seal with the Clerk's office. *See* ECF No. 12. Although there is no explanatory reference, it appears that Ms. Mantica's citations to "LTD" occasionally refer to the PDF page number in the digital version of the ER record entitled Unum-1 w redactions.PDF and otherwise refer to the bates-number(s).

## II. The Plan & Policy

Alere purchased Unum group long-term disability insurance policy 574975 003 (the "Policy") on January 1, 2009 as part of its employee benefit plan (the "Plan"), and the Policy covered Ms. Mantica as a full-time employee. (ER 54, 85.) In its capacity as Plan Administrator, Alere delegated discretionary authority for the Policy's interpretation and claim determinations to Unum. (ER 91.)

The Policy, in pertinent part, defines disability as follows:

> You are disabled when Unum determines that:
>
> - You are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
>
> - You have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 24 months of payments you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.
>
> You must be under the regular care of a physician in order to be considered disabled.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability.
>
> We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative.

(ER 67.) "Regular Occupation" is defined as "the occupation you are routinely performing when your disability begins." (ER 84.) "Gainful Occupation" is defined as "an occupation

that is or can be expected to provide you with an income within 12 months of your return to work that exceeds: 80% of your indexed monthly earnings, if you are working, or 60% of your indexed monthly earnings, if you are not working." (ER 81.) "Material and Substantial Duties" is defined as duties that are "normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified." (ER 82.) "Indexed Monthly Earnings" is defined as "monthly earnings adjusted on each anniversary of benefit payments by the lesser of 10% or the current annual percentage increase in the Consumer Price Index." (ER 82.) There is an "Elimination Period" of 180 days (ER 55), which is defined as "a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum." (ER 81; *see also* ER 67.)

The proof of claim for long term disability must include:

> - that you are under the regular care of a physician;
> - the appropriate documentation of your monthly earnings;
> - the date your disability began;
> - the cause of your disability;
> - the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation; and
> - the name and address of any hospital or institution where you received treatment, including all attending physicians.

(ER 57.)

## III. Ms. Mantica's Disability Claim

### A. Initial Claim

Unum approved Ms. Mantica's short term disability benefits on November 11, 2014,[2] effective on her last day of work, October 30, 2014. (ECF No. 13-1 at 2; ECF No. 14-1 at 2;

[2] Ms. Mantica turned 58 years old the next day, November 12, 2014. (ECF No. 13-1 at 2, ER 123.)

ER 5, 123.) According to Unum, the primary diagnosis was lumbar radiculopathy, and the secondary diagnosis was spinal stenosis (low back pain). (ECF No. 14-1 at 2.) By April 2015, Ms. Mantica's condition had not improved and lumbar fusion surgery was recommended with a projected recovery period of three to four months. (ER 399, 418.)

Ms. Mantica became eligible after the 180-day elimination period and started receiving long-term disability benefit effective April 29, 2015. (ECF No. 14-1 at 2; ER 5, 427.) Ms. Mantica was paid long-term disability benefits under the "own occupation" definition of disability in the Policy for 24 months beginning on April 29, 2015. (ECF No. 14-1 at 4; ER 427-29.) On August 30, 2015, Ms. Mantica was approved for Social Security Disability benefits with disability benefits to begin in April 2015. (ECF No. 13-1 at 3; ER 571.) The payment of Social Security benefits resulted in an overpayment from Unum of $10,156.56, for which Unum requested repayment. (ER 596-98.) A review on June 13, 2016 included a note that the lumbar fusion surgery had not yet happened but was likely pending with an expected recovery of three to four months. (ER 11331.) The review also noted that Ms. Mantica had been involved in a motor vehicle accident on March 14, 2016 in which she was rear-ended and suffered further back injury. (*Id.*)

On August 5, 2016, Unum sent a letter to Ms. Mantica advising that the criteria (and evidentiary requirement) for continuing long-term disability benefit eligibility would change on April 29, 2017 at the end of the first 24-month period. (ECF No. 14-1 at 4; ER 922.) The letter noted that disability during the first 24 months is defined "as the inability to perform the material and substantial duties of your regular occupation," but after 24 months, the definition

changes "to mean the inability to perform any occupation for which you are reasonably qualified by way of training, education, and experience." (ER 922.)

On January 27, 2017, as part of reviewing Ms. Mantica's disability benefits, Unum sent letters to her treatment providers—Dr. Alan S. Weiss of Annapolis Integrative Medicine, and Physician's Assistant Michael Weeks of Physical Medicine and Pain Management Associates, P.C.—seeking information about her work capacity. (ER 962, 967.) In response to the question whether Ms. Mantica was able to perform the demands of "Sedentary Work"[3] on a full-time basis, Dr. Weiss replied "yes" as of March 20, 2017, and Mr. Weeks replied "yes" as of March 21, 2017. (*Id.*)

On March 27, 2017, Unum had Ms. Mantica's Administrative Record reviewed internally by Marian Pearman, a Senior Vocational Rehabilitation Consultant, who opined that based on Ms. Mantica's education, training, and experience, there existed full-time sedentary jobs[4] that Ms. Mantica was capable of performing that, within 12 months of her return to work, would net her income of 60% of her indexed monthly earnings, $5,282.95.[5] (ECF No. 14-1 at 6; ER 973-76).) On April 5, 2017, Unum's claims reviewer recommended that the claim should be subject to a "pay and close" effective as of April 28, 2017, based on her ability to be gainfully employed in a sedentary occupation. (ECF No. 13-1 at 4; ER 14.)

---

[3] Sedentary Work was defined in the letter to include: "Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time up to occasionally during the day." (ER 962 (citing the *Dictionary of Occupational Titles*).)

[4] Ms. Mantica asserts that the review listed several positions, many of which do not exist in the *Dictionary of Occupational Titles*. (ECF No. 13-1 at 4.)

[5] Ms. Mantica's average monthly pre-disability earnings were $8,683.24. (ECF No. 14-1 at 4 (citing ER 518).) Sixty percent, as indexed on April 29, 2017, equated to a monthly benefit of $5,282.95. (ECF No. 14-1 at 4 (citing ER 5, 938).)

On April 11, 2017, at the end of her regular occupation disability period, Unum both verbally and by letter notified Ms. Mantica of its claim determination, i.e., that she was no longer eligible to receive a monthly long-term disability benefit after April 29, 2017. (ECF No. 14-1 at 6; ER 980, 982-86.) Unum's letter stated that it had determined that Ms. Mantica was able to perform the duties of other gainful occupations, and it detailed the information that supported the decision, primarily that her treatment providers had responded that she was not restricted from full-time sedentary capacity as of March 20 and 21, 2017. (ER 982-84.)

**B. First Appeal**

Ms. Mantica, through counsel, submitted a timely appeal on September 21, 2017, supplementing the Record with additional information to support her claim.[6] (ECF No. 13-1 at 4-5; ECF No. 14-1 at 6; ER 1012-1204.) According to Unum, Ms. Mantica provided no new evidence supporting a total disability. (ECF No. 14-1 at 6.) On behalf of Unum, Dr. Scott B. Norris, M.D. ("Dr. Norris"), Board Certified in Family, Occupational, and Aerospace Medicine, performed an internal analysis and review of the Record. (ECF No. 14-1 at 8.) On November 1, 2017, Dr. Norris observed that (1) Ms. Mantica's reports of functional loss on appeal are inconsistent with the evidence in the Record as of April 28, 2017; and (2) the evidence in the Record does not support physical limitations from lifting, carrying, pushing and pulling up to 10 pounds occasionally, mostly sitting with occasional standing, and/or walking for brief periods of time beyond April 28, 2017. (ECF No. 14-1 at 8; ER 10327-331.)

6 Ms. Mantica additional records are discussed in Additional Treatment Records Provided on Appeal on page 10 herein. She also provided a substantial body of general medical literature regarding her condition.

Dr. Norris also wrote to Dr. Weiss on November 2, 2017, seeking an explanation for Dr. Weiss's September 18, 2017 opinion (ER 1411-18), and asking that he offer opinions specific to Ms. Mantica's condition as of April 28, 2017. (ECF No. 14-1 at 8; ER 10342-345).) Dr. Weiss's response stated only, "See questionnaire previously signed by me 9-18-17, which was provided with . . . [illegible]." (ECF No. 14-1 at 8; ER 10343.) A second vocational analysis, performed on November 17, 2017 by Kelly Marsiano, M.Ed., CRC, Senior Vocational Rehabilitation Consultant, confirmed that the additional vocational information presented on appeal did not alter the original vocational review. (ECF No. 14-1 at 8-9; ER 10357-359.) Unum denied the appeal on November 17, 2017 by an 11-page letter detailing the information supporting its decision. (ECF No. 13-1 at 5-6; ER 10362-72.)

### C. Second Appeal

Ms. Mantica filed a second appeal on January 23, 2018, addressing the new information used in Unum's claim denial. (ECF No. 13-1 at 6; ECF No. 14-1 at 9; ER 10401-406.) According to Unum, the second appeal also contained no new or additional evidence relevant to Ms. Mantica's disability status as of April 29, 2017. (ECF No. 14-1 at 9.) Unum notified Ms. Mantica on February 1, 2018 that it was upholding its April 11, 2017 claim determination. (ECF No. 14-1 at 9; ER 16430-31).) The letter referenced Unum's November 17, 2017 letter for details. (ER 16430.)

## IV. Ms. Mantica's Medical Records

### A. Medical Records Used For Initial Claim Decision

On October 31, 2014, Ms. Mantica's date of disability, she was diagnosed with intervertebral lumbar disc degeneration, lumbar radiculopathy, lumber spondylolisthesis/

spondylosis, and spinal stenosis with claudication by Robert Loya, Physician's Assistant, as referred by Dr. Agostino Visioni. (ER 126-29.) There are ongoing treatment reports from Mr. Loya or others in the same medical office through to 2017, at some point transitioning to Mr. Weeks as the Physician's Assistant. She was also referred to Dr. Thomas Lee, a pain management specialist who provided lumbar epidural steroid injections on December 3, 2014, January 13, 2015, and May 18, 2015. (ER 166, 176, 402.) Ms. Mantica met with a neurosurgeon in April and June 2015, and surgery was recommended. (ECF No. 13-1 at 8; ER 227, 360.)[7] There are various other records of tests, scans, and x-rays in 2014-2016 that confirmed Ms. Mantica's chronic pain and disc degeneration.

Ms. Mantica underwent a Functional Capacity Evaluation on February 10, 2015, conducted by Work Strategies/NovaCare. (ER 193, 195-206.) The report indicated that she was capable of functioning in the Sedentary Physical Demand Category, according to the U.S. Department of Labor, for an 8 hour work day. (*Id.*) Dr. Weiss provided a letter on April 23, 2015 to Unum indicating that it was medically necessary at that time for Ms. Mantica to continue short term disability because she was unable to perform her regular work duties. (ER 297-98.)

According to Unum, on April 29, 2017, Ms. Mantica was being treated by two medical professionals—Dr. Weiss and Mr. Weeks. (ECF No. 14-1 at 4-5.) On January 26, 2017, Dr. Weiss's office reported to Unum that he last treated Ms. Mantica on May 26, 2016 and that no follow-up was scheduled. (ECF No. 14-1 at 5; ER 941.) On March 20, 2017, Dr. Weiss

---

7 There were other surgical consults and recommendations in 2017 (ER 1457, 1460), but Ms. Mantica did not ever have the surgery performed.

treated Ms. Mantica for a left foot fracture and complaint of shoulder pain, and he completed a questionnaire stating that he considered Ms. Mantica capable of sedentary work on a full-time basis as of that date. (ECF No. 14-1 at 5; ER 1472, 962-963.)

Ms. Mantica was seen by Mr. Weeks on January 10, 2017, at which time she was treated with trigger point injections and reported that they were "providing excellent reduction in muscle pain and increased range of motion, as well as activity level tolerance.". (ECF No. 14-1 at 5 (quoting ER 1419-22).) Mr. Weeks observed at that time that Ms. Mantica equally utilized both sides of her body, had full use flexors and extensors to the upper and lower extremities, and moved easily about the exam room without assistance. (ER 1425.) On March 21, 2017, Mr. Weeks completed a questionnaire stating that he considered Ms. Mantica capable of full-time sedentary work as of that date. (ECF No. 14-1 at 5-6 (citing ER 967-68).)

**B. Additional Treatment Records Provided on Appeal**

On appeal, Ms. Mantica produced additional treatment records from Mr. Weeks for February 28, March 28, and June 23, 2017, which includes reports of multi-site pain essentially unchanged, fluctuations in daily pain levels, good results with minimal side-effects from medication, and reduction in pain from the trigger point injections. (ER 1423-32.)

Ms. Mantica included treatment records from Dr. Parineet Bambrah, of Orthopedic and Sports Medicine Center, treating Ms. Mantica on April 11, 2017 for left arm pain, observing that Ms. Mantica had chronic cervical symptoms, mild to moderate degenerative disc disease, but also "normal range of motion cervical spine in all planes without significant pain." (ER 1442-44.) Electrodiagnostic testing was performed. (ER 1443.) April 7 and 17, 2017 records of Dr. Cyrus Lashgari, also of Orthopedic and Sports Medicine Center, indicated

that Ms. Mantica was treated for left arm, shoulder, and neck pain "consistent with cervical etiology" and did not include an opinion on Ms. Mantica's ability to work. (ER 1447-50.)

A Functional Capacities Evaluation was prepared by CAM Physical Therapy and Wellness Services, LLC on May 9, 2017. (ER 1357-67.) The evaluation indicated that Ms. Mantica was not capable of working in any position competitively at that time. (*See* ER 1357, 1365 "The findings of this examination indicate that Ms. Mantica did not demonstrate the functional capabilities to return to work in her previous position, or any other position at this time due to her material and non-material handling task deficits.")[8]

A July 11, 2017 Neurorehabilitation Evaluation prepared by Rick Parente, Ph.D. observed that Ms. Mantica had "mild problems" with her balance and coordination, was intellectually "above average," had "no difficulty doing tasks that require rapid visual searching." no "obvious problems with her intellectual ability," no "serious problems with her attention span," and her "ability to learn symbol-digit associations rapidly" was average. (ER 1370-76.) The report stated that there was "no substantial evidence in her profile of symptom magnification, feigned performance, or malingering." (ER 1373.) Dr. Parente stated that Ms. Mantica should avoid work that requires "climbing, rapid ambulation, or coordinated movement," and noted that her medical condition was taking an emotional toll, which would "require ongoing psychotherapy to assist with her adjustment to disability." (ER 1377.)

Ms. Mantica included an August 7, 2017 record of Dr. Clifford Solomon, treating her for neck, shoulder, and low back pain, with a diagnosis of spondylolisthesis of lumbar region

---

8 In its motion memorandum, Unum reported that the Evaluation stated: "Ms. Mantica is capable of performing part-time sedentary employment." (ER 14-1 at 7.)

and degenerative disc disease. (ER 1460-69.) It offered no opinion as to her ability to work. She also added an August 23, 2017 treatment record by Dr. Emeka Nwodim, of Bay Area Orthopedics & Sports Medicine, who referred Ms. Mantica to physical therapy, aquatic therapy, and pain management. (ER 1457-59.)

Last, Ms. Mantica included a September 18, 2017 Medical and Functional Capacity Assessment prepared by Dr. Weiss.[9] (ER 1411-18.) Dr. Weiss made a diagnosis that included lumbar radiculopathy, lumbar spondylopathies, lumbar-spondylosis, and myofascial pain syndrome. (ER 1411.) The report included sitting, standing, and walking limitations noting that Ms. Mantica could stand and/or walk for less than one hour during an eight-hour workday and walking for less than 100 feet without interruption due to pain followed by a 15-25-minute rest before walking again. (ER 1413.) The report included a lifting and carrying restriction and noted poor balance. (ER 1414-15.) The report also noted that Ms. Mantica would require several periods of one-hour rest in a day to manage pain, fatigue, and medication side effects. (ER 1416.) Dr. Weiss stated that he concurred with the findings of the Functional Capacities Evaluation dated May 19, 2017 as well as the July 11, 2017 Neurorehabilitation Evaluation. (ER 1417, 1418.)

## STANDARDS OF REVIEW

### I. ERISA Standard of Review

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court of the United States held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be

[9] Unum notes that it is unclear whether Dr. Weiss examined Ms. Mantica in support of the September assessment or whether it was based on his examination in March 2017. (ECF No. 14-1 at 7.)

reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If a court finds that the plan administrator was vested with discretionary authority to make eligibility determinations, the reviewing court then evaluates the plan administrator's decision for abuse of discretion. *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010).

Responding to *Bruch*, many ERISA plan documents, such as those in the present case, granted discretionary authority to the administrator or fiduciary. However, several states, either by statute or regulation, have attempted to nullify grants of discretionary authority, and Maryland Insurance Code Ann. § 12-211 ("Section 12-211"), which was enacted in 2011, is such a statute. *See Weisner v. Liberty Life Assurance Co. of Boston*, 192 F. Supp. 3d 601, 609-13 (D. Md. 2016) (conducting *de novo* review of denial of benefits based on Section 12-211, which prohibits the sale of insurance policies that "contain[ ] a clause that purports to reserve sole discretion to the [insurer] to interpret the terms of the policy").

Unum argues that this Court should evaluate its decision under an abuse of discretion standard and does not respond to Ms. Mantica's assertion that a *de novo* review is required.[10] Although the United States Court of Appeals for the Fourth Circuit has not yet had an opportunity to state its position on state statutes such as Maryland's Section 12-211, other appellate courts that have entertained the question have found them effective. *See, e.g.*, *Fontaine v. Metropolitan Life Ins. Co.*, 800 F.3d 883, 886 (7th Cir. 2015) (concluding that the state

[10] Ms. Mantica asserts that Unum has conceded that this matter is to be decided under the *de novo* standard of review rather than the abuse of discretion standard. (ECF No. 21 at 11.) Unum has neither affirmed nor denied this assertion.

regulation at issue was a law that regulates insurance, not preempted by ERISA, and affirming the district court's application of *de novo* review); *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 848 (9th Cir. 2009)(noting that "highly deferential review is not a cornerstone of the ERISA system"); *American Council of Life Insurers v. Ross*, 558 F.3d 600, 609 (6th Cir. 2009) (same); *see also Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 257 (5th Cir. 2018) (remanding for *de novo* review, but had not considered preemption arguments). Further, as noted in *Weisner*, "roughly half of the states have now implemented laws along the same lines as the model act, and courts have continually upheld these laws, often in the face of contract language that otherwise would require deference." 192 F. Supp. 3d at 613.

Maryland law controls in this case, and Unum's plan was amended with an effective date of January 1, 2014, which is after the implementation of Section 12-211. (ER 51.) The default rule for ERISA cases is *de novo* review, *Bruch*, 489 U.S. at 115, and the provision affording discretion to Unum is void under Maryland law. Therefore, this Court will not give deference to Unum's decision on Ms. Mantica's claim under the Policy. Following Judge Bredar's reasoning in *Weisner*, this Court will conduct a *de novo* review of the denial of benefits in this case.

"When reviewing a benefits denial *de novo*, the Court's 'job is to make [its] own independent determination of whether [the claimant] was entitled to the . . . benefits. The correctness, not the reasonableness, of [the] denial of . . . benefits is [the Court's] only concern . . . .'" *Id.* at 613 (quoting *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013)). In the ERISA context, a court generally limits the scope of its review to the administrative record, but in exceptional circumstances, introduction of evidence outside the administrative

record may be permitted. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993) (*en banc*).

## II. Summary Judgment Standard

"There is a divide among the circuit courts of appeal and a void in the Fourth Circuit as to whether Fed. R. Civ. P. 56 is necessarily the appropriate mechanism to resolve a § 1132(a)(1)(B) ERISA claim for denial of benefits." *Horton v. Life Ins. Co. of North America*, Civil Action No. ELH-14-3, 2015 WL 1469196, at *12 (D. Md. 2015) (citations omitted). In her opinion, Judge Hollander noted that district courts in the Fourth Circuit continue to use Rule 56 to resolve § 1132(a)(1)(B) ERISA claims, but also "routinely resolve benefits denial claims through bench trials." (*Id.*) *See also Weisner*, 192 F. Supp. 3d at 607-09 (discussing summary judgment vs. bench trial on the administrative record in an ERISA denial of benefits case). In this case, neither party has requested a bench trial pursuant to Rule 52.

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in

the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-59 (2014). At the same time, if a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the court credits the record over the averred fact. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his

adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted); *see also Sherwood v. Washington Post, 871 F.2d 1144, 1148 n.4* (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they 'may be probative of the non-existence of a factual dispute.'" *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)); *Georgia State Conference of NAACP v. Fayette County Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015).

## DISCUSSION

ERISA regulations require that a claimant receive a "full and fair" review by having the claimant informed of all reasons for the claim denial and having the opportunity to rebut the basis for denial. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. As is typical of most plans, to prevail on a challenge of denial of benefits, Ms. Mantica has the burden of proof and must show that she submitted sufficient evidence, in accordance with the requirements of the Policy, to show that she was disabled within the meaning of the Policy. *See Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 276 (4th Cir. 2002).

At issue in this case is the long-term disability benefit available under the Policy after 24 months:

> After 24 months of payments you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

(ER 67.) Ms. Mantica was paid the benefits due under the Policy for the first 24 months, but Unum contends that Ms. Mantica did not meet her burden to establish that she could not perform the duties of any gainful occupation after the 24-month period ended.

Ms. Mantica argues that the following evidence, at a minimum, is sufficient to support her claim:

- The Functional Capacities Evaluation prepared by CAM Physical Therapy and Wellness Services, LLC on May 9, 2017. (ER 1357-67.) This evaluation was current, as opposed to the "outdated" Functional Capacity Evaluation performed on February 10, 2015, conducted by Work Strategies/NovaCare, which indicated she was capable of performing a sedentary job. (ER 193, 195-206.) The May 9, 2017 evaluation indicated that she was unable to return to work in any capacity. (ER 1365.)

- The July 11, 2017 Neurorehabilitation Evaluation, which stated that there was no magnification of symptoms, no feigned performance, and no malingering. (ER 1373.)

- The September 18, 2017 Medical and Functional Capacity Assessment prepared by Dr. Weiss. (ER 1411-18.) This assessment confirmed her medical diagnosis and made findings regarding her limitations, including lifting and carrying restrictions, poor balance, requirement for several rest periods during the day. (*Id.*) Dr. Weiss also concurred with the May 9, 2017 Functional Capacities Evaluation and the July 11, 2017 Neurorehabilitation Evaluation. (ER 1417, 1418.)

- The medical treatment records confirming her chronic pain and degenerative disc disease.

Ms. Mantica adds that Unum's in-house reviewer, Dr. Norris, never examined her, never addressed the combination of Ms. Mantica's conditions or her age in his evaluation, and selectively addressed the individual reports. (ECF No. 15 at 6-7.) She also argues that Dr. Norris is not qualified to discount the finding of the Functional Capacity Evaluation because he does not perform this testing as part of his profession or practice. (*Id.*) Ms. Mantica also

questions the reliability and credibility of Unum's reviewers based on multiple examples of bias in Unum's prior litigation proceedings. She makes further observations about the weight that should be given various reports and the selective reviews performed by Unum.

Unum makes multiple arguments related to how it did not abuse its discretion and made a reasonable decision in terminating Ms. Mantica's benefits. However, this Court is not reviewing the decision for an abuse of discretion and must decide if a correct decision, not a reasonable one, was made. Unum questions the credibility of Dr. Weiss on the basis that there was no evidence that he had seen Ms. Mantica when he issued his updated report. (ECF No. 17 at 3.) Unum also argues that the May 9, 2017 Functional Capacities Evaluation is unreliable and suggests that the findings reflect "exaggerated or self-limiting behavior on the part of Ms. Mantica during the Evaluation." (ECF No. 14-1 at 13.) Unum also makes further observations about the weight that should be given various reports and reiterates that its process of review was deliberate and principled.

After reviewing all of the parties' arguments and the Evidentiary Record, this Court concludes that it is unable to resolve whether or not Ms. Mantica has met her burden without making factual findings and credibility determinations. Accordingly, this Court concludes that it must resolve this case sitting as a finder of fact at a bench trial. This Court will limit its review to the contents of the Evidentiary Record, supplemented with limited testimony to include Ms. Mantica, an expert selected by Ms. Mantica, one Unum corporate representative, and one expert that Unum selects to testify. The parties shall be directed to contact chambers to promptly set in dates and deadlines for a bench trial.

## CONCLUSION

For the foregoing reasons:

1. Defendant Unum Life Insurance Company of America's Motion for Summary Judgment (ECF No. 14) is DENIED.
2. Plaintiff's Cross Motion for Summary Judgment (ECF No. 13) is DENIED.
3. This case shall proceed to a bench trial pursuant to Fed. R. Civ. P. 52.
4. Plaintiff shall contact chambers no later than Friday, March 22, 2019 to schedule a telephone conference convenient to both parties to discuss further scheduling.

Dated: March 11, 2019.

Richard D. Bennett
United States District Judge